UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                      :
UNITED STATES OF AMERICA              :
                                      :    CRIM. NO. 3:02CR95 (AHN)
VS.                                   :
                                      :
CHARLES BREWER III                    :    JUNE 14, 2005
_____:

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Charles Brewer III submits this sentencing memorandum in connection with the proceeding scheduled for June 15, 2005, to offer his view of the current status of the impact that the Sentencing Guidelines should have on his case and to suggest a reasonable approach to the sentencing decision. In light of the collateral motion that the government has filed or will file, the Guidelines and mandatory statutory minimum would not be binding in any event. However, even without that motion, to the extent that the guidelines should bear at all on this sentencing, they should be entitled to little weight because they substantially overstate the offense.

United States v. Booker, 125 S. Ct. 738 (2005), and United States v. Crosby, 397 F.2d 103 (2d Cir. 2005), stand for the proposition that the factors set forth in 18 U.S.C. § 3553(a), including the guidelines, should be considered by the Court. No one factor within § 3553(a) is elevated to presumptively controlling weight. The Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." Crosby, 397 F.3d at

113-14. However, that does not mean that they are presumptively the controlling factor, more important than all – or any – of the other factors listed in § 3553(a).

Under Booker, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing." Booker, 125 S. Ct. at 766. Those factors include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines

or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The court in Crosby declined to define how a district judge is to "consider" the Guidelines.[1] However, nothing in either Crosby or Booker suggests that a Guidelines range, once it is found, is to be presumptively considered "reasonable" or, in essence, a default position. Although the court cautioned that judges should continue to "reduce unwarranted disparities," they should now be able to achieve "more individualized justice." Crosby, 397F.3d at 113-14. "In short, there need be no 'fear of judging.'" Id.

---

[1] Some district courts have adopted this definition: "The term 'consider' requires the sentencing judge to be "aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable," and be sure that "nothing in the record indicates misunderstanding about such materials or misperception about their relevance." United States v. Mann, 2005 U.S. Dist. LEXIS 2150, at *13 (S.D.N.Y. Feb. 14, 2005) (Baer, J.).

With these standards in mind, defendant turns to this case.

**1. The nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of the offense are set out in the Pre-Sentence Report in some detail. As to the offense, there is no claim that weapons or violence was involved in any way in this offense.

As to the defendant's history, he has no prior criminal convictions leading to a jail sentence of over ten days. (PSR ¶¶ 31-41). Most importantly, he has been out on bond for three years with no new criminal activity and no violations of his conditions of release. He has been fully employed at his family's hair salon. He has been active with his father in the business of the church. While the Court is certainly entitled to expect that behavior, with some regularity in other cases that expected behavior is not met.

Further, defendant's father is ill and he provides important care to him. (See attached letters from Patrick Asiedu, M.D., and Carl Robert Pullen, D.O.). As Dr. Asiedu states, defendant helps his father "with most of his activities of daily living." Further, although Dr. Pullen is not his treating physician, he offers a more detailed view of defendant's father's medical condition from his own knowledge of the senior Mr. Brewer and a review of the medical records: defendant helps his father with bathing and with cleaning skin ulcers, and providing transportation for his father. See United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1990) (impact on family may be factor for downward departure).

> **2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Certain of the subsection (2) factors do not weigh at all in this case. Specifically, it is not clear that a sentence in this case can provide him with needed educational or vocational training, medical care, or other correctional treatment. There is likely no need to "protect the public from further crimes of the defendant," since he has been crime-free for three years. § 3553(a)(2)(C).

The consideration of general deterrence, required under § 3553(a)(2)(B), mandates that the Court consider the extent to which similarly situated potential offenders will be deterred from committing similar crimes by whatever sentence the Court imposes in this particular case. This is, however, a highly unpredictable exercise. Several co-defendants have been sentenced already. The Court can lawfully sentence Brewer to anything from a period of probation to a lengthy jail sentence. It is difficult to conclude that somewhere along that continuum there is a point where other persons will conclude that, because of the Court's sentence in this particular case, they will decline to commit similar crimes. In essence, general deterrence assumes that people who decide to commit crimes think that they will be caught and punished, and that they will rationally consider whether to commit the crime they are contemplating under some sort of risk/benefit analysis. That seems less certain that we would like. In any event, the Court can readily conclude that any sentence imposed, including a sentence of probation under these

unique circumstances, will not serve materially different purposes as it relates to general deterrence.

As to the subsection (a)(2)(A) factor, this is the only factor that weighs in support of anything more than a sentence of probation. To be sure, the offense is serious. However, while serious the offense is less serious than many other offenses that have led to lengthy prison terms, such as those involving violence and particularly those involving violence connected with narcotics. .

**3. The kinds of sentences available.**

The sentence available, as it relates to incarceration, is from probation to life.

**4. Sentencing guidelines range.**

Defendant does not dispute that the guidelines range was properly calculated in the PSR at 324-405 months. However, under the circumstances of this case, they should not be entitled to significant weight. Most importantly, they should not be considered to be the "starting point" for considering the government's motion.

In United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005), Judge Adelman concluded that the Guidelines are not presumptive, but are truly advisory, and should be treated as one factor to be considered in conjunction with other factors that Congress enumerated in § 3553(a). Judge Pratt followed Ranum in United States v. Myers, 353 F. Supp. 2d 1026, 1029-30 (S.D. Iowa 2005):

> At first blush, a system of discretionary sentencing would appear to invite what Congress hoped to avoid, unfairness at sentencing. The Supreme Court in <u>Booker</u>, however, reminded judges and the public that true uniformity exists not in a one-size-fits-all scheme, but in "similar relationships between sentence and real conduct." 125 S. Ct. 738, at 21. This is the guiding principle at work in <u>Booker</u>. This Court will endeavor, then, to square the real conduct presented by the evidence presented concerning a particular defendant, with the public interests expressed through the sentencing statute, in order to deliver a judgment in a manner as even-handed and reasonable as humanly possible.

<u>Id.</u> <u>See also</u> <u>United States v. West</u>, 2005 U.S. Dist. LEXIS 1123, at *6-*7 (S.D.N.Y. Jan. 27, 2005) (Sweet, J.) ("The Guidelines calculations are to be treated 'as just one of a number of sentencing factors'" in part because several of the factors identified in § 3553(a) conflict with prescriptions and proscriptions of Guidelines, and that such conflicts will require resolution by district courts); <u>United States v. Jones</u>, 352 F. Supp. 2d 22, 26 (D. Me. 2005) (reviewing factors identified in § 3553(a) "in determining whether to apply the now advisory Guidelines" and concluding that Guidelines would not be followed under the circumstances); <u>United States v. Jaber</u>, 362 F. Supp. 2d 365 (D. Mass. 2005); <u>United States v. Moreland</u>, 2005 U.S. Dist. LEXIS 7393, at *3-*4 (S.D.W. Va. Apr. 27, 2005); <u>Simon v. United States</u>, 361 F. Supp. 2d 35, 40 (S.D.N.Y. 2005) (Sifton, J.) (after considering <u>Wilson</u> and similar cases "I adopt the view that the Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by § 3553(a)," in part because § 3555(a) does not distinguish between the weight to be given to any of the factors listed," so that "giving 'heavy' weight to the Guidelines may therefore be in tension, if not conflict, with § 3553(a)'s command to consider a multitude of factors").

The Guidelines establish a base offense level of 38, because it involves cocaine base in excess of 1.5 kilograms. A cocaine powder case with similar quantities would have a base offense level of only 26.[2] Even with the role adjustment required, Brewer's adjusted offense level would be, under that circumstance, 27 after acceptance of responsibility. His guidelines range would be 87-108 months.

Several courts have considered the disparity between crack and powder cocaine, and the Sentencing Commission's stalled efforts to reduce the disparity, in sentencing defendants charged with distributing cocaine base to sentences below what would be the guidelines range. Simon v. United States, 361 F. Supp. 2d 35, 43 & n.10 (E.D.N.Y. 2005) (Sifton, J.) ("Since Booker, a number of courts have accepted the argument that in cases involving crack, they should consider non-Guidelines sentences."). Of course, in light of Booker and the government's motion the guidelines are not mandatory. However, the Court in fashioning a fair sentence should consider that the guidelines range, as properly calculated in the PSR, likely overstates the seriousness of the offense.

**5. Policy Statements.**

Defendant knows of no policy statements that the Court should consider relating to this case.

---

[2] Indeed, the Sentencing Commission proposed in 1995 that the ratio between crack and powder be equalized at a 1:1 ratio for purposes of guidelines calculation. Simon v. United States, 361 F. Supp. 2d 35, 46 (E.D.N.Y. 2005) (Sifton, J.)

**6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

This factor is somewhat more difficult to apply than in some cases because of the government's motion and because of the lengthy amount of time that has been required leading up to that motion.

**7. Restitution.**

This does not appear to be a factor.

### Conclusion

Taking into consideration all of these factors, a sentence of probation or of minimal additional incarceration would adequately take into account the factors listed in § 3553(a).

THE DEFENDANT,

_____
William M. Bloss
Federal Bar No. ct01008
Koskoff Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
TEL: 203-336-4421
FAX: 203-368-3244
email: bbloss@koskoff.com

## CERTIFICATION

      This is to certify that a copy of the foregoing has been faxed and mailed, postage prepaid, on this 14th day of June, 2005, to all counsel and pro se parties of record, as follows:

Peter Markle, Esq.
Assistant U.S. Attorney
157 Church Street
23rd Floor
New Haven, CT 06510

                                                                                         _____
                                                                                         William M. Bloss